Good morning, Your Honors. This is Mark Schneider from Plattsburgh, representing Corinna Harrington. She applied for SSI benefits on November 2, 2015, when she was 50 years old, and she would have gritted out at that point if limited to sedentary work. Now, the black letter law is an ALJ must give controlling weight to the opinion of a treating doctor if supported by clinical and diagnostic techniques and not inconsistent with other substantial evidence. And you need clear and convincing rationale to reject the uncontradicted evidence of the treating doctor. In this case, there was no doctor at Opine that she could do light work, no doctor at Opine she could walk or stand for six hours or lift up to 20 pounds. Dr. Savelle has been her treating primary doctor since at least 2014. He's been treating her pain with a narcotic analgesic, which is not conservative treatment. Dr. Savelle noted her moderate acute distress on exam, and his opinions are based on the objective test, the MRIs that show severe right neuroformal for menal compromise and L4, L5 sclerosis. And he made a statement to Social Security that was unsolicited by my client saying she was disabled by her pain, that she had limited range of motion and had muscle spasms. And then a couple of years later, again, he noted that he's seen her regularly. She needs a cane to walk. She can walk and stand two hours a day and rarely lift 10 pounds. He said she's not a Did he ever diagnose obesity? I'm sorry. You mentioned obesity as a contributing factor in your brief and discussion. But did Dr. Savelle ever diagnose obesity? Or is that just something the inferred record based? Well, I don't think you need to diagnose it because she had it. But I don't think he ever did say that her obesity exacerbated her pain. Okay. And in terms of I have been puzzled by this December 2018 report that you all learned of that was actually prepared by Dr. Savelle, I guess a couple of weeks the ALJ completed or issued his decision. And that you have asked in your reply brief now to introduce this as new evidence. And of course, it's, you know, it's two years old and the district court, the district court or the ALJ, so far as I can see, were ever asked to consider it. It's a document prepared by Dr. Savelle, whose views you're asking us to give significant weight to. Can you explain why this was not brought to the attention of the ALJ or the district court and was only raised now? I'm very about needing to consider whether thoughts of things we can really consider in the first instance, expand the record years later. Your Honor, I didn't learn about it until recently. And there was another lawyer involved in the case before me. But I really just wanted to add that as a footnote to show what the ALJ would have found if he had gone back to Dr. Savelle to ask about her deep vein thrombosis. That at the hearing, he asked, do you still have problems with blood clots? And she said, I don't know. I have to see my doctor. And before discounting the DVT, the judge could have simply written or had his staff call the ALJ. But that is not the most important part of this case. Well, part of what you all have been arguing is for remand to consider. Have the district court or the ALJ or the appeals company, no one brought it to the attention of anyone in authority until now in the reply brief. And yet, if you look at it, it has some, you know, could have some potentially some significant bearing on the nature of the treatment that Dr. Savelle made. I find it very puzzling and concerning. Well, Your Honor, that was before the Social Security Administration on the record and her second claim. And that's where I found it. Well, but in the second claim, that doesn't mean it was considered at the first. It should have been considered as to the prior period. And I don't know exactly how the bureaucracy works. But, you know, if you have two separate cases pending with respect to two different periods of time, disability in one doesn't necessarily dictate disability in the other. And the records don't necessarily apply in both. I agree. I don't think it's determinative. But I think it's worth considering. I think her obesity, her level two obesity should be considered. But it comes really down to that the most important issue is that Dr. Savelle, the treating physician, gave uncontradicted evidence that she was at best able to do sedentary work. And if she was limited to sedentary, she would be disabled. And I think in this case, you could actually remand for benefits because there was no evidence to support the ALJ's by not crediting her testimony, which was supported by an MRI. And in that case, you should credit it that she had the clinical and radiological tests that supported her reports of pain and she was treated for it. Thank you.  You're welcome. Bob, is he here? Yes. Good morning. May it please the court, Nahid Serochiari on behalf of Apelli, the Commissioner of Social Security. So, I'd like to begin with my opposing counsel's argument regarding Dr. Savelle's opinion. The ALJ here had good reasons for granting Dr. Savelle's opinion little weight, and there was no duty to clarify that there was contradictory evidence. There was an opinion from a consultative examiner, Dr. Polano, who examined Ms. Harrington and determined that she had no physical limitations or no significant physical limitations. And this was based on a physical exam the consultative examiner performed, which was entirely normal. But moreover, the ALJ here explained that Dr. Savelle's treatment notes include just a finding of plus one pedal edema, which is barely detectable or trace pedal edema, as well as a finding that Ms. Harrington was neurologically normal in all of her exams, except for a note about excessive salt. Dr. Savelle only has one mention of pain with range of motion, and that's one mention in 2015, pain with range of motion bending. And then a few mentions of paraspinal muscle spasms. That does not at all support the incredibly restrictive opinions here. Further, the ALJ found that Dr. Savelle's opinions were inconsistent with the record as a whole. The ALJ considered that he was a primary care physician. He did prescribe only conservative care. There's no mention of him referring her to a specialist to consider surgery or even pain management or physical therapy. All he did was prescribe her one medication. And furthermore, so that I believe the ALJ articulated very good reasons for providing little weight to Dr. Savelle's extremely restrictive opinions. Regarding her, Ms. Harrington's obesity, if I may, Dr. Savelle never diagnosed obesity. But even if he did, even in his opinions, he never said that it caused any functional limitation. And that's Ms. Harrington's burden is to prove that there was a functional limitation. There's nothing in the record to show that. Just looking at her height and weight in the relevant period and the lumbar issues that she was complaining of, do you really have to have someone have written obesity in the record in order for that to bear on whether the assessment of her capacity was supported by substantial evidence or not? Well, I think that under the regulations, you do have to have a diagnosis of a medically determinable impairment in order to consider whether something is a severe impairment. But I will say that even if this court finds that the ALJ should have found that obesity was diagnosed, that would be a harmless error because there's nothing in the record showing that there's any functional limitation from the obesity. So it would not have impacted the ALJ's analysis or decision at all. And I'll note that, yes, Dr. Savelle pointed out that she was obese, he noted as a descriptor, and so did this consultative examinator, Dr. Polano. Dr. Polano found she had no limitations, including in gait or anything like that. Dr. Savelle never noted a functional limitation from her obesity. So there was nothing for the ALJ to analyze here in terms of her obesity, even if it was an impairment. What's your position about this additional medical report that was filed in connection with the new application for the subsequent period and which seems to speak to the period at issue here, though, and that the treatment regime for the spinal issues included physical therapy? Had the ALJ known that, maybe that would have inclined him to give greater weight to Dr. Savelle. That was in the government's session, I guess, anyway. Yes, Your Honor. I would argue that, no, it shouldn't be taken into account in this case. I'll note a couple of things. Now, first, I don't think the report is at all material, and I can explain why. But I also want to note that, like my opposing counsel noted in his motion, this report from Dr. Savelle was submitted in a subsequent claim in front of the same ALJ. The ALJ did not find it to be material. He reviewed a similar report from Dr. Savelle, found it to be unsubstantiated and not probative. And in the subsequent claim, the ALJ didn't find disability based on any physical impairment. It was based on something else that was a mental impairment that was more recent treatment and notes. So, clearly, this would not have changed the ALJ's determination if it had been in the record. Thank you for explaining that. Thank you. And regarding the report, I'll also just note that it's a checkbox form. Basically, Dr. Savelle checks off that certain impairments are permanent, and that's not the issue here. The issue is whether those impairments cause more than minimal functional limitations. And this form, again, checking off some limitations, it's not probative. This court has noted that checkbox forms such as this one are of limited value, and this one here certainly was. And then I'd like to also just touch on the point about recontacting Dr. Savelle, if I may. So, an ALJ has a duty to recontact when there's obvious gaps in a record. There was no obvious gap in this record. And Ms. Harrington did say at the hearing that she wasn't sure if she still had the deep venous thrombosis and that she was going to a doctor to determine that in a couple of months. And yet, Ms. Harrington is represented by an attorney, and the attorney never followed up with the ALJ. And my opposing counsel came on board when this case was at the appeals council, you know, shortly after this report, shortly after the report from Dr. Savelle was written. And yet, he never submitted it to the appeals council. And I'll just note that there were no obvious gaps here that required recontact for Dr. Savelle. And so, there was no error in that My opposing counsel did not really touch on the mental impairments here, but I will just note that the ALJ's finding that Ms. Harrington had the capacity to perform a range of unskilled work was supported by two opinions from psychological examiners, one, excuse me, one psychological examiner, and one state agency examiner. And the only other thing I'll note is that Ms. Harrington's contention that this MRI, excuse me, going back to her physical impairment, that this MRI substantiates her allegations of pain is completely mirrorless. This is one imaging test from 2013. And it's imaging, it's images. That doesn't prove anything. There needs to be some clinical corroboration or something showing functional limitations. An MRI on its own is not probative of anything. And this MRI was before the ALJ. The ALJ discussed it, he weighed it, reweighing evidence is beyond the scope of the substantial review standard. And that is the as Ms. Schneider, Mr. Schneider alluded to. So, in conclusion, I'll just say that substantial evidence supports the commissioner's decision that Harrington was capable of performing a range of light unskilled work and her past relevant work as a housekeeper. Ms. Harrington has not met her burden of proving that she was more restricted or that she could not perform her ALJ's decision should not be considered in this appeal. Thank you. Thank you very much. Mr. Schneider, you have two minutes of rebuttal. Yes. Yeah. Substantial evidence test requires a reweighing of the evidence. That's what the Supreme Court has held. You look at the evidence for and against. I've never heard an argument that an MRI is not probative or material. Rather, it is the gold standard for determining whether somebody has a nerve impingement. And a nerve impingement is something that could cause pain, which does support my client's testimony. This court should certainly use a substantial evidence test that the Supreme Court has articulated. And in fact, it should liberally apply the law and substantial evidence because this is a remedial statute. Dr. Paolino did not give any opinion about her pain. He didn't review the MRI and he certainly didn't say that she could stand or walk for six hours. And there's no case that I could see where you have to diagnose obesity. It is. If you have a BMI of 36, you are obese. I'm sorry. I just want to say you have one minute left. Yeah. And the ALJ should have mentioned it. Counsel, this is Judge Walker. Could you address what your adversary pointed out about the discrepancy between Dr. Sebel's report and his notes? His notes show that she has been treated for pain. She apparently was not a candidate for surgery and he treated it with a narcotic medication. And when he gave his opinion, he didn't refer her to any specialists, neurologists or anything of sort, right? No, he didn't. And that doesn't mean that she didn't have pain. And there was evidence that he did refer her for physical therapy. And the judge did not consider her mental limitations. She had moderate limitations. And at step two, he acknowledged it and yet did not limit her RFC based on that at all. But what we need to look at is the statement that Dr. Sebel gave to Social Security, an unsolicited report by Mrs. Harrington, and he gave his opinions. And if the judge felt that his opinions were not well supported, he could have asked the doctor to explain why, but he didn't. All right. Thank you very much. You're welcome. We have your arguments. We'll take the matter under advisement.